DISSENTING OPINION OF THE
HONORABLE J. CHILD.
■ It appears from the bill, answers, exhibits and depositions in this case,- and the record of the proceedings on the law side of this court, as well as by the judgment in the superior court of the law, for the county of Adams, that some time in the year 1814, one Daniel S. Swearingen, of the then territory of Missouri — sent his agent Mr. Bird, a negro man slave by the name of Stephen, to New Orleans for sale. That on the 15th of March 1814, said slave was sold to Pearse & Nelder, for the price of 425 dollars, and that in the winter of 1814-15, the slave escaped from the possession of Nelder, and in attempting to reach the linea *337 of the British army, then encamped below that city, was intercepted by the American troops under the command of general Jackson and confined to labor at the breastworks erecting by order of that officer, for the defence of the town. From this latter place the said Stephen was taken by one Thomas Van Swearingen a deserter from the army of the United States, and conveyed to the neighborhood of Natchez, who there, sold him to John S. Miller, one of the defendants to the bill, for the price of $367 — :shortly'after this latter sale, the slave Stephen, being found at the landing below the city of Natchez, passing as a free man, by the name of William, was hired by Stephen H. Doxey, the complainant, as a boat hand to work from that place to the city of New Orleans — at this latter place he was reclaimed by John Nelder, taken out of the possession of Doxey, by virtue of legal process and delivered over to Nelder as the rightful owner, claiming the absolute property in the slave.
On the 2d of October 1815, an action of trover was instituted in the supreme court, of Adams county by John S. Miller, against Stephen H. Doxey, for the conversion of the slave Stephen, who at the May term of said •court, 1821 recovered a verdict and judgment for the sum of 1000 dollars. This judgment was removed by writ of error to the supreme court of the state, and on a hearing before this tribunal, on the law side of its jurisdiction, the judgment of the court below was affirmed. The bill now under consideration was afterwards filed in the superior court of chancery, praying relief against the judgment of the highest court of law in the the state; Where a decree pro forma, was made, by consent on suggestion of doubt by the judge, perpetually enjoining the judgment at law, the chancellor remarking that the principles and rules of decision pi equity, that might govern the case appeared too inflexible to bend to justice; and conscience too scrupulous to decree against it.
The case is now here by appeal from this decree of the superior- court ■of chancery.
Such- is the general outline of the case, and-in the progress of the investigation, it may become nesessary to advert to some other facts, with more particularity. The first question arising upon this posture of the case, is, whether the parties, by submitting to the decision of a court of law, must • b? governed by it, right or wrong.
*338 This is a point which has been so often decided that it cannot be necessary or expedient to discuss it again.
The first case cited by the counsel for the complainant is from 2 Vernon, 146; Graham vs. Stamper; but even this case which appears to be tho strongest on the] part, of the appellee, Doxey, when passing'the scruti-nizeing mind of a Marshall, is said to possess a secret equity, of which tho defendant could not avail himself at law, for the court was not at liberty to enquire into the legal error, whilst the question was depending in the superior court, and in the case of Ambler vs. Wyld 2 Mass Rep. 36; the whole case was confessedly not before the jury, for’ the court would not permit them to hear the testimony, and refused to sign a bill of exceptions. In the case of Pickett vs. Morris, S. B. Roane, judge says^ wherever a case is fully and fairly tried in a court of law, the decision is binding upon the parties, and a re-examination of the cause in a court of equity is certainly improper; adding, however, that this principle will extend to no case where there has not been a fair trial, as well as a full discussion of the cause; and if the judge had concluded by saying, without negligence or laches of the party complaining, the principle, perhaps, would have better sustained the test of investigation.
I am at a loss, says Marshall, J< C. to comprehend the distinction which has been taken between cases of a more legal nature, and such as are mixed with equity. — whether the case be one of exclusive or concurrent jurisdiction — if the whole subject be decided in the court of law, equity can no more re-examine it than the courts of law in-a similar case could re-examine a decree of the court of chancery.
in Duncan, vs. Lyon, — 3d John. C. Rep, 356. — The chancellor lays it down as a settled principle, that a party will not be aided after a trial at law, unless he can impeach the justice of the verdict, by facts or on grounds of which he could not have availed himself — or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. This appears to be the rule of the English chancery, and it appears also to have been frequently noticed and recognized in the courts of equity in this country — 7th Cranch, 336, 3, Dossaussure, 324, 4, to 5 Mumford 155,2, John C. R. 557, 5 do. 320 6, do. 87 — 479—are all cases in point, in support of the rulo so .clear- *339 !y settled by chancellor Kent, in 3d John. C. R. before cited. — If the principle was tobe materially relaxed, the departure from it, as I apprehend, would soon be perceived and felt as a great public grievance, by encouraging negligence, protracting litigation, exhausting parties, and drawing within the cognizance of this court the general review of trials at law, and under the peculiar organization of our j udicial system, lead inevitably to four trials in cases where either party might be dissatisfied with the decision of the court on the law- side of its jurisdiction, or wish for delay.'
Taking this rule as the guide by which I intend to be governed throughout the examination, and being fully satisfied that this court cannot sit to correct the errors of a court of law of competent and peculiarly appropri - ate exclusive jurisdiction.
I shall proceed, in the first place, to enquire into the aspect of the case as it was presented for consideration and decision by the court of law — the points which were there decided, and upon which it was competent for the party complaining to have required that tribunal to determine, on a full and fair hearing.
And in the second place, the features of the bill now under advisement will be carefully examined, in order the more clearly to ascertain whether any substantial legal grounds can be discovered by the comparison to ex•empt the case from the operation of the rule that excludes the interposition of a court of equity.
On a careful inspection of the record of the proceedings on the law side of the court, it appears that the case was submitted to the jury upon the testimony of the following witnesses, viz: John Nicholls, Walter EL Myers, John Nelder, and William James, on the part of the defendant; The; plaintiff having previously given in evidence, the bill of sale from Thomas Van Swearingen, to himself, and shown facts amounting to a conversion of the slave, in the opinion of the court, by the defendant Doxey. The court whose decision, this tribunal of law cannot revise, permitted all the evidence to go to the jury, but charged them as to its legal effect. One of the questions which appears in the bill of exceptions to have been urged at the trial, and upon which great reliance seems to have been placed, is in the following words: — The court charg *340 ed the jury, that if the special or qualified property he proven in the plaintiff, the defendant cannot set up absolute property in a third person, as between bailor and bailee. The decision of the court upon this point was most unquestionably correct, for it would be a most egregious absurdity for a wrong doer to wrest the possession of property from a bailee, render him liable over to the absolute owner, and then set up the title of he bailor to prevent a recovery, which alone could enable the former to meet the demand of the person claiming the absolute property. On an examination, however, of the evidence of Nicholls, James and Nelder, it will be seen that this question, as stated in the bill of exceptions, was altogether irrelevant, being an abstract question of law, totally unconnected with the facts of the case. '
By the testimony of three witnesses, the most important point in the case, was involved in much doubt and intricacy, as it went to the jury. — ■ Thomas Van Swearingen was either authorized to make a valid title to John Miller, and vest the absolute property in him, or he must have been a felonious taker, and unable to make any title whatever. The law upon this point is very distinctly pronounced in the case of Dunn vs. Baldwin, 8 Mass. Rep. 518; where the court in delivering their opinion assert, that if a person steal goods and sell them in any place, the property is not thereby changed, but remains in the original owner, who may reclaim them; there being no market overt m this commonwealth. Either the absolute property was then in Miller, or he would derive none from Swearingen as a felonious taker. It is, therefore, difficult to conceive, how this question could have been raised on the trial at law, when not a single witness deposed to any fact connected with it.
The bill of exception contains another question upon which I have no doubt as- to the correctness of the decision by the court of law. It is this: — The court charged the jury that the measure of damages in the action of trover for a slave was the price of the property, with the value of his services from the time of the demand. Although the general rule of damages in trover is the value of the property with legal interest from the time of conversion. Yet the law is now well settled, both in England and in the United States, and more particularly so in our own courts; that eases where the use of the property far exceeds in value the legal inter-' *341 est of the country, an exception is thereby created in favor of the former instead of the latter, as the measure of damages.
The two remaining questions propounded and to be found in the l’eeord, are vague, uncertain and deal too much in generals to be easily applied to the case. In endeavouring, however, to make the application, as they are, in substance, something like a general charge by the court, that the law of the case was with the plaintiff on all the points involved in the controversy, I shall barely add, that I am inclined to the opinion, that such a 'direction to the jury would not have been erroneous in the posture the case assumed before that tribunal, unless the jury had believed from the evidence then adduced, that Thomas Van Swearingen, who sold the slave to Miller, obtained possession by a felonious taking.
I have bestowed upGn this part of the subject a greater degree of attention than the case would seem to require; after having settled the principle as a guide in the investigation, that this court could not correct the errors of a court of law.
But this course has been adopted rather with a view to future contrast, and elucidation; than for the purpose of reviewing previous decisions in the same case, on the other side of the court.
On the remaining branch of the subject, questions of much weightier consideration, and greater difficulty will necessarily arise. The bill in this case, was certainly drawn with a very obscure view to the substantial merits of the controversy — the coincidence between the obligata and probata, being scarcely discernible. It possesses, however, some advantages, of which the complainant, Stephen H. Doxey could not have availed himself, on the trial before the court of law. It makes John Welder a party to the suit — places him in a situation to have his rights conclusively determined by a final decree, in a suitable case to which he is made defendant — forces a full discovery of his title, and discloses by the additional testimony of George Andrews and Daniel S. Swearingen, the character of the entire transaction in all its injustice, placing John S. Miller in the attitude of a vendee of a felon, for a comparatively inadequate consideration — seeking to enforce an unconscientious recovery, almost without a parallel,[against Stephen H. Doxey, the casual innocent possessor, from whom the property had been reclaimed by John Nelder, the rightful own *342 cr. Litlte or no reliance, however, appears to have been placed upon these grounds by the pleader, who prepared the complainant’s bill, notwithstanding they constitute the basis of his defence, and were unavailable at law, when considered with a view to a full and complete adjudication of the rights of all the parties in interest.
Upon this fail developemsntof its leading features, the case differs very essentially from the aspect it presented in the court of law; and if the same state of facts had been made out by the evidence before that tribunal, which are proven to exist here, and the court decided, that Stephen IL-Doxey could not set up the title of N elder, to protect himself against a recovery by John S. Miller, the vendee of Thomas Van Swearingen who was most undoubtedly a felonious taker, I should have had little hesitation in pronouncing such a decision most egregious ly erroneous. This however was not the case.
Had these grounds for equitable relief and the interposition of this court been expressly stated in the bill, and urged as reasons to show that the defendant could not have had a full and fair hearing upon the entire merits of his case in a court of law, and that there was no negligence or fault on his part, I am inclined to the opinion, that they might have laid the foundation fora bill of interpleader, before suit brought, or lite pen-dente-, or if the facts of the case would not sustain such a proceeding, a bill of discovery and relief may be entertained after final judgment in a court of law, upon the ground of newly discovered testimony, or the necessity of making Neider a party to the suit, which could not have been done at law, so as to render the recovery binding upon him; — a bill merely of discovery, not being admissible in such an aspect of the case, during the pendency of the suit, as Neider was admitted a competent witness and neither party or privy to the action.
I am well aware that, in case of a suit being instituted, by a third person, with a paramount title against the vendee of a chattel, with [express or implied warranty, .and notice to the vendor, whether he assists in the defence or not, he is so far a privy to the suit, that his rights will be fixed by the judgment, and the recovery will be conclusive in an action by the vendee against him, for the purchase money and interest. This rule, however, does not prevail, as I apprehend, to the same extent with regard. *343 to adverse claimants of the absolute properly, in the action of trover; and, although, a recovery by Miller might have vested the title, as between him and Doxey, in the latter, I do not think it would have affected the right of Nelder, wWwas neither a party nor privy to the suit.
Nelder is nowhere, a party to the bill, and by submitting to answer, has subjected himself to such decree as the court may render upon a final •hearing of the cause; — and the newly discovered testimony of Andrews and Daniel S. Swearingen places the question as to absolute property being in Nelder, beyond a doubt.
These seem to be the only substantial grounds for equity interposition, and neither of these are directly charged in the bill as such. The principal reliance of complainant apparently reposed upon the presumed power of this court to correct the errors of a court of law,- and upon the charge of fraud contained in the bill, on the part of the defendant Miller.
The first of these has been already disposed of, or shewn not to exist,— and the latter is expressly denied by the answer of Miller, to which such credit might be given, that it cannot be gainsayed but by the testimony of one positive witness, corroborated by potent circumstances. — It is true that the circumstance of the inadequacy of the consideration, paid by Miller for the slave, as contrasted with the price paid Nelder, and the excessive amount of the verdict, isa fact too obvious to be controverted;— and, although it might have been sufficient to excite suspicion, and put a cautious purchaser upon inquiry, I do not think it so gross as to constitute in itself, a conclusive evidence of fraud, — and the fact established by the deposition of Walter H. Myers, of the slave Steven, going at large, with free papers, by the- name of William, is expressly negatived by the answer of Miller, so far as alleged to have been done with his knowledge or consent, which excludes the idea of fraud intentionally practised upon the community at large. Therefore neither of these items can be considered as giving the character of fraud to the transactions.
With regard to the technical informalities in the stating part of the bill, I have examined some recent decisions, where analagous questions of practice have been discussed and settled. In Wheelan, vs. Wheelan, 3d Cowen, p. 37, chief justice Savage, in delivering the opinion of the court, in which 23 senators concurred, lays down the practice in express *344 terms, that to warrant relief for any cause in a court of equity, it must be stated in the bill; but the charge need not be direct. It is suffiicient if on a hearing upon the pleadings and proofs, the grounds of relief can be gathered from an examination of the whole bill. In this case, the proof showed fraud and undue influence, which were not expressly stated in the bill as grounds of relief; yet the prayer was sustained.
A question of practice has also been raised by the counsel for the complainant, in which'they insist that the former recovery at law could only be taken advantage of by way of plea. The authorities upon this point of chancery practice are numerous and conflicting; but. so far as my experience and research have extended, I think the preponderance is greatly in favor of the practice of insisting on matters in the answer which might be pleaded in all cases where the hill charges fraud or seeks a discovery, and prays relief, in such cases the defendant is compelled to answer in part, and neither a plea or demurrer would cover the whole ’case.
In all cases, where the entire defence reposes upon pleadable matter, I am of opinion that it- is best to plead it-, the same rule also applies, in part, to a demurrer; but, in cases like the present, where the bill charges fraud, seeks a discovery, and prays relief, it is well enough to insist on pleadable matter in the answer; or, if a demurrer is necessary to answer to the fraud and discovery, and demur to the relief.
If, then, the grounds of relief can be gathered from an examination of the whole hill, many of the difficulties opposed to the jurisdiction of this court have been surmounted and overcome.
A single question still remains for discussion, which was suggested by the presiding judge on the hearing, and which, as I have been informed by the chancellor, presented the most insurmountable obstacles to the complainant’s success on the hearing in the court, below. It is this:— Whether the complainant ought not to have filed his bill of interpleader pending the suit, and is he not thereby precluded from relief here, after a final judgment on a writ of error, in the court of law.
By reference to the rules of decision on bills of interpleader, perhaps it ■can be satisfactorily demonstrated, that the circumstances of this case are fnot-such as would have sustained a proceeding of this kind. A bill of *345 Interpleader is defined, by the practical register, to be a bill exhibited by a third person, — who, not knowing to whom he ought of right to render á debt or duty, or pay his rent, fears he may be hurt by some of the claim-1 ants, and therefore prays that they may interplead, so that the court may judge to whom the thing belongs, and he be thereby rendered safe in the payment ; and this he may do, whether suits be actually commenced against him in law, or in equity, or he is only in danger of being sued or molested by the parties.
The cases in the books, where bills of interpleader have been denied, aie neither few nor indefinite. In Eden, on injunctions, 247, and cases there cited, in Burnett vs. Anderson, the law is distinctly stated to be, that, if the plaintiff had parted with the possession of the goods, this bill cannot be sustained upon an undertaking to pay over the value of them to the party who shall be found entitled to them. ■ In this case, Doxey Was in no further danger of molestation by Nelder, who had reclaimedthe property, and having parted with the possession himself, could not have exhibited his bill of interpleader. 3 Mad.,!277; lVes.,248;2 Ves.,310,304; 3 Bro., 63, 38, though not strictly analogous, are authorities which go to show in what cases a bill of interpleader will be refused. The instances are, in fact, very rare where Such bills have progressed to a. final decree. I am, therefore, of opinion that, for the opinions before stated, such a proceeding would not have been sustained in this casé.
On an examination of the whole bill, by way of recurrence, the following statements can be collected, although they are not directly charged as substantive grounds upon which the complainant relies, for the aid and interposition of this court:
That the defendant, John S. Miller, has recovered a judgment at law, against the complainant, Stephen H. Doxey, for 1,000 ¡dollars, in an action of trover for a slave;
That the absolute property in the slave was in John Nelder, the other defendant, who had reclaimed him, and taken him out of the possession of Doxey, before suit brought by Miller;
That Doxey had possession of the slave but a short time, by hiring, believing him to be a freeman ;
That Miller claimed the slave, by purchase, from a felonious taker;— *346 and according to the doctrine in 3d Cowen, before cited, this is sufficient' —These statements are also ascertained, demonstrated, and made clear,, by the proofs in the case.— It is too obvious, therefore, to admit of argument, that this recovery at law, which John S. Miller is seeking to enforce against Stephen II. Doxey, is enormously excessive, unjust, and unconscientious. The question then recurs, has this recovery been obtained under such circumstances as will authorize the defendant to impeach the justice of it before this tribunal?
When we take up a reporter to read a decided case, the leading ob„, ject is, for the most part to be found in a search after principles, and, if possible, to trace an entire subject from its origin, to the time when the questions of law it involves are settled down by a series of uniform adjudications, -either into general rules, admitting of exceptions, or rules of universal application which necessarily exclude them.
By thus tracing the subject, then, it appears that in the aged and obsolete case, in 2d Vernon, before cited, the chancellor interpossd, and granted relief against a judgment at law, because a person, acting as the agent of government, had been rendered liable in his individual capacity; — -and this, too, pending a writ of error before a superior tribunal: — and in one of the cases in 2d Wash., the reasons for equity interference were, that the court of law ruled out the evidence, and refused .to-sign a bill of exceptions, under circumstances as was admitted on the trial, where the party might have availed himself jof a writ of mandamus; — while in the other, the court seized upon the trivial circumstance of the counsel on one side having inclined the other to suspend a motion for a new trial, upon a promise to allow time to make an application for an injunction, and magnified it into something like fraud, upon v/nicb chancery jurisdiction would attach.
These cases, however, are entitled to but little consideration at the present day, except as examples to shew how far those'judges would go in the face of principles, not only to preservo the fountains of justice puro at their sources, but to see even in individual cases of peculiar hardship that thetr streams should not be disturbed in their course, as they flowed to the door of each citizen- in the community. The general rule, then, as settled in the case cited from 3 'John. C. Rep., is subject to the following *347 'exceptions, viz that a verdict at law may be impeached in this court, by fraud, accident, surprise, or where the party complaining could not, by any due diligence, have availed himself of the same matters at law.
On an examination of that part of the answer of Miller, in which he insists upon the judgment at law as a plea in bar, there is no averment that the matters alleged in the bill were, or could have been fairly and fully in controversy before that tribunal. — Neither does it so appear by the bill ef exceptions 5 and tho pleadings and proofs in the case, negative such a presumption; and if this matter had been pleaded in as loose a manner as it is insisted on in the answer, I am inclined to the opinion that it would have been demurrable.
If Nelderhada right to reclaim the property, according to the laws of -this state, and had actually asserted it, and it was not in the power of Doxey to force a disclosure of that right on the trial at law, by a discovery ■of Nelder’s title, and the act of slave-stealing by Thomas Yan Swearingen, the case comes precisely within the exception laid down by the chancellor, in 3d John. C. R.; and I think it has been satisfactorily shewn that a bill, purely of discovery, would have been unavailable, and that a pro•ceeding by interpleader could not have been sustained.
It is upon these grounds that lam of opinion this unjust recovery at law is impeachable here, and ought to be perpetually enjoined.
It has, however, been suggested that the law of the State of Louisiana .protects the vendee of a thief in the title against the original owner, where the purchaser is bona fide, for an adequate consideration, without notice of the larceny. In the absence of decided cases, by the courts of •that State, suffice it to relate, that such is not the law here, and, therefore, it could notvary the case, when our own tribunals are called upon to de-■cideit; unless to urge it as a -reason to shew that it was more imperiously incumbent upon Miller, to have proceeded at once against Nelder in, the courts of that State.
The decree of the superior court of chancery, perpetually enjoining ■the judgment at law, should therefore be affirmed.
I am of opinion that tho decree of the chancellor, dividing the costs, is wrong, The law of costs is, to be sure, a matter discretionary with feat court, Nevertheless, there are some established rules, by which the *348 chancellor should be governed in the exercise of his discretionary author-ity in decreeing cosls. — One of these rules, and a very just and inflexible-one, too, is, that the party substantially prevailing in equity, is as much, entitled to full costs, as in a qourt of law.